IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-00955-SCT

*DON FOSTER AND THE CITY OF YAZOO CITY,
MISSISSIPPI*

*v.*

*JACQUELINE NOEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/96 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN D. BRADY |
| ATTORNEY FOR APPELLEE: | KATRINA M. BIBB GIBBS |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 6/4/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/25/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here, the appellants appeal a verdict in favor of the plaintiff under the Tort Claims Act, challenging the denial of a summary judgment, the examination of an adverse witness, the admission of certain evidence and testimony, the sufficiency of the evidence on the issue of liability and whether the amount of damages was against the overwhelming weight of credible evidence. Because we find the police officer's involvement in this matter was limited to executing a valid arrest warrant and that there is no evidence he acted in reckless disregard of the plaintiff's safety and well-being, we reverse as to him on the issue of liability. As to all issues concerning the City of Yazoo City, we affirm.

**I.**

¶2. On November 15, 1994, Phil Kirby, the manager of the Jitney Jungle grocery store in Yazoo City, Mississippi, was carrying a customer's groceries to the car when he noticed a black male with two packages of rib-eye steaks under his shirt. Kirby told an employee to call the police. He then followed

the male to a truck where he observed the man place the steaks under the driver's seat of the truck. There was another black male in the passenger seat of the truck whom Kirby recognized as Robert Kyles. Kirby told the man to return the steaks. After retrieving the steaks, Kirby directed the men to wait there as the police would arrive shortly. Instead, the man drove off, but not before Kirby wrote down the truck's tag number.

¶3. When police officers arrived at Jitney Jungle, Kirby gave them the license plate number. He also told the officers that the perpetrators were two black men and that he knew one of the men to be Robert Kyles. A few days following the theft, Kirby went to the Yazoo City Police Department to execute an affidavit regarding the shoplifting incident. Following standard procedure for the Yazoo City Police Department, Kirby supplied the assisting officer Kent Luckett with the details of the shoplifting incident and the truck's license plate number. In turn, Officer Luckett filled out an "Information for Affidavits" form and a subsequent affidavit. On both forms, the appellee, Jacqueline Noel who owned the truck, was listed as the person who stole the steaks.

¶4. A few months following the shoplifting incident, Jacqueline Noel received a letter from the Yazoo City Police Department, informing her there was an outstanding warrant for her arrest for petit larceny. Noel's sister, Eddie Mae, drove her to the Yazoo City Police Department to inquire about the warrant. Once there, she informed appellant Officer Foster that there was a warrant for her arrest for shoplifting. Foster looked through the warrant file and found that there was, in fact, an outstanding warrant for Noel's arrest. Pursuant to the warrant, Officer Foster placed Noel under arrest and detained her at the station for approximately ninety minutes, until her sister bailed her out.

¶5. On the way home, Noel cried and complained of a headache. Her sister bought a "BC" headache powder for Noel's headache and implored her not to allow the incident to upset her. Eddie Mae dropped Noel off at home and went to her own nearby house. Shortly after that, Eddie Mae told her daughter to call and check on Noel. Noel's two-year-old son answered the phone, informing Eddie Mae's daughter that his mama was dead. Eddie Mae rushed over to find Noel unconscious in the middle of the living room floor. Noel's husband arrived shortly thereafter. Unable to revive Noel, they rushed her to the hospital where she saw her physician, Dr. Bartee. Dr. Bartee diagnosed Noel as suffering from acute anxiety due to the arrest, which exacerbated her pre-existing condition of depression.[1] Dr. Bartee gave Noel a shot and a prescription for an anti-anxiety drug. He also told her to return for a follow-up visit, although there was no evidence in her medical records of a scheduled follow-up appointment.

¶6. Noel sued Jitney Jungle Stores of America, Inc., the Jitney Jungle manager, Phil Kirby, Officer Foster (the arresting officer) and the City of Yazoo under the Mississippi Tort Claims Act, alleging false arrest and emotional and mental distress. She settled with Jitney Jungle Stores of America, Inc. and Phil Kirby.

¶7. The remaining defendants, Officer Foster and Yazoo City, filed a motion for summary judgment with attached exhibits in which they asserted that Kirby went to the Yazoo City Police Department to report a theft, that Kirby signed an affidavit stating Noel stole the steaks and that Officer Foster and Yazoo City relied upon the sworn-to, notarized affidavit executed by Kirby when they obtained the warrant for Noel's arrest and when Officer Foster executed the warrant. According to the defendants, there was no proof the arrest was unlawful as it was performed pursuant to an affidavit and warrant

issued by a judge.

¶8. Noel did not file an answer to the defendants' motion for summary judgment, and on March 27, 1996, a hearing on the motion was held. Counsel for the defendants argued that Noel's arrest was lawful. They conceded she was detained, but they opined the detention was lawful because Kirby came to the station and swore out an affidavit against Noel. They further opined that the judge issued the warrant and that as a police officer, Officer Foster, had a duty to execute the warrant when Noel came to the station.

¶9. Counsel for Noel responded that Yazoo City instigated the arrest of Noel -- not Kirby because Kirby merely went to the station with a license plate number. Noel's position was that the police officers, not Kirby, put Noel's name on the "Information for Affidavits" form and the affidavit. Furthermore, Noel's attorney emphasized the fact that on the "Information for Affidavits" form it recited that Officer Luckett -- the officer who filled out the forms -- investigated the allegations when in fact no such investigation occurred.

¶10. The trial court judge ruled, relying upon the memorandum submitted to the court and the arguments of counsel, that there were genuine issues of fact in dispute and therefore that the motion for summary judgment should be denied -- the factual dispute being who provided Noel's name as the shoplifter. The judge ordered Noel's attorney to draw up an order denying the motion for summary judgment.[2]

¶11. The bench trial of this matter was held on August 09, 1996. At the trial, Phil Kirby testified on Noel's behalf. In short, Kirby testified that he gave the police officers the license plate number and that he signed the Information for Affidavits form and the affidavit, both of which included Noel's name. However, Kirby told the trial court that the only name he gave the officers was that of the man he recognized, Robert Kyles, and that while he saw Noel's name on the Information for Affidavits form when he signed it he thought Noel's involvement (the extent of it) would be to tell the officers who was in possession of her truck on the day of the shoplifting incident. Kirby also maintained that Noel's name was not on the actual affidavit when he signed it.

¶12. Noel called Officer Kent Luckett as an adverse witness. Luckett conceded that on the Information for Affidavits form he signed his name as the investigating officer although an investigation was *not* conducted as far as he knew. Nevertheless, Officer Luckett testified that Kirby stated Noel stole the steaks. Counsel for Noel contradicted Luckett's trial testimony with his deposition testimony in which he stated that he did not know if Kirby told him Noel stole the steaks or not.

¶13. After a lengthy redirect examination between Noel's attorney and Luckett, the officer finally conceded that he could not really remember whether Kirby supplied Noel's name. In addition, he admitted that usually when a citizen comes in with a tag number and accuses the owner of the vehicle with that particular tag number of committing a crime an investigation is conducted. He could not "quite" remember if he investigated Noel as the alleged shoplifter.

¶14. Noel's sister, Eddie Mae, testified as well. She informed the court of Noel's reaction to the false arrest, i.e., that she was crying and complaining of a headache on the way from the police station and that she bought Noel a "BC" powder. She also testified that at the hospital Noel continued to cry and

pull her hair out. According to the sister, "Jacqueline wasn't Jacqueline any more." In fact, a couple of months after the arrest, Eddie Mae broached the subject of the arrest with Noel and was dismayed when Noel "snapped," started crying and went into a daze.

¶15. Through Noel's sister, Noel's attorney introduced a copy of a newspaper insert which reported that Noel had been arrested for shoplifting. Defense counsel objected to the introduction of the copy, arguing that it was not the original and that plaintiff failed to reveal that she had the original newspaper before trial. Noel countered that the obligation to request the original was on defense counsel, not the proponent of the copy.

¶16. The trial court resolved the matter by allowing the defendants a fifteen minute recess to review the original. Following the recess, the trial court held a preliminary hearing on the admissibility of the paper. At the hearing, the judge asked counsel for the defendants how seeing the original paper the morning of trial prejudiced his parties. The defendants asserted the paper's relevance was greatly diminished because it was published in Yazoo County while Noel resided in Holmes County.

¶17. The trial court admitted the copy of the notice of arrest into evidence, noting that the defendants had a copy of the insert for several months before the trial commenced and that they failed to show any harm. The judge did, however, limit testimony concerning the paper to the copied portion. The defendants did not request that the entire original newspaper be admitted into evidence.

¶18. Noel testified that she received phone calls from people who read the paper and saw the notice of her arrest. Following Noel's testimony, Dr. Bartee, her family physician and the doctor who treated her the night of the arrest, was called to testify. The defendants adamantly objected to Dr. Bartee testifying because he had not been listed as an expert witness pursuant to Miss. R. Civ. P. 26 and URCCC. 4.04(a). Noel conceded that Dr. Bartee had not been disclosed as an expert witness pursuant to the rules, but maintained he was being called as a fact witness instead of an expert witness.

¶19. The trial court allowed Dr. Bartee to testify as a treating physician. Over defense objection, Dr. Bartee testified about Noel's history of depression and that he diagnosed her as suffering from anxiety the night of the arrest. He further stated that he believed the arrest exacerbated her previous condition of depression. Defense counsel objected to this opinion, but the trial court determined it was proper as it referred to the doctor's direct treatment of Noel on the night of the arrest.

¶20. The sole witness for the defendants was Officer Foster. Foster testified that he is legally bound to serve a warrant once a judge signs it. He also stated that he had no information or indication that the information in the affidavit was incorrect, i.e., he had no reason to question the validity of the warrant for Noel's arrest.

¶21. Following Foster's testimony, the defense rested, and the trial court ruled in Noel's favor, concluding that:

> . . . Whether the detention was unlawful, this incident was initiated by Phil Kirby, who called the police to complain about two black males that shoplift (sic) two steaks. Mr. Kirby saw these males, asked that they return the steaks, which they did. And Mr. Kirby even knew one of the names of the persons that had taken the steaks. Further, Mr. Kirby testified that he never told

the officers that Jacqueline Noel took the steaks. He told them of the incident and gave a tag number. The officers, upon running the tag number, came up with the name of Jacqueline Noel, and, apparently, disregarded the remainder of the affiant's statement concerning the two black males which the Court finds that the testimony of Mr. Kirby has not been uncontradicted (sic). . . . [T]he Court finds the Defendant owed a duty to the Plaintiff, Ms. Noel, to properly investigate the complaint before requesting a warrant for arrest, and if the defendant had investigated the complaint, no warrant would have been issued for Ms. Noel's arrest. . . . [T] here was ample evidence to call Ms. Noel in for questioning, but not for an arrest, based on the testimony that Mr. Kirby advised the officers of who committed the crime. As a result, Defendant acted in gross disregard for the rights of Ms. Jacqueline Noel, and, therefore, the Court finds that the arrest was unlawful.

¶22. The trial court awarded Noel $25,000 in damages, finding that she "became upset and crying, had headaches, and after, she was arrested and immediately passed out upon her return home and required medical attention . . . Ms. Noel's condition [depression] was further aggravated by the incident of her arrest, and . . . she [will] require future treatment. . . . Ms. Noel's reputation was damaged as a result of the publishing of the incident in the paper."

¶23. Aggrieved, the defendants appeal the lower court's determination to this Court.

## II.

¶24. The appellants, Officer Don Foster and Yazoo City, challenge the court's finding on the issue of liability, arguing it was against the overwhelming weight of the evidence because the arrest of Noel was lawful and not in reckless disregard of her safety and well-being.

¶25. The Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9(1)(c) (Supp. 1997), provides that a governmental entity and its employees acting within the course and scope of their employment or duty shall not be liable for any claim unless the employee acted in *reckless disregard* of the safety and well-being of any person not engaged in criminal activity at the time of the injury.

¶26. The appellants, citing **Turner v. City of Ruleville**, No. 95-CA-00880-SCT , 1997 WL 562151, (Miss. Sept. 11, 1997) (motion for reh'g pending), argue they did not act in reckless disregard of Noel's safety and well-being. Noel argues to the contrary, and the trial court found that the appellants did, in fact, act in reckless disregard by failing to investigate Noel's involvement, if any, in the shoplifting incident despite Kirby informing police officers that the shoplifters were two black men.

¶27. All parties concede that Noel was detained. The dispositive issue is whether that detention was unlawful. Under the Tort Claims Act, a detention is unlawful if, in fact, it was done in reckless disregard of the person's safety and well-being. In **Turner**, this Court held that reckless disregard is synonymous with willfulness and wantonness and that it includes an element of intent to harm. We affirmed an order of dismissal there in favor of the City of Ruleville, finding that the complainant had not stated a claim upon which relief could be granted because she did not allege that the police officer intended harm to come to her.

¶28. Here, Noel did allege that the appellants acted willfully and wantonly with the intent to harm her. Still, this Court concludes that *as to Officer Foster* Noel failed to prove reckless disregard even

under a less demanding standard. There was ample evidence that Officer Luckett, the police officer who filled out the Information for Affidavits form and the affidavit on which Noel was identified as the shoplifter, acted in reckless disregard of Noel's safety and well-being because Kirby had told him that two black men stole the steaks. Despite this information, Luckett put Noel's name on both forms without investigating before he obtained a warrant for her arrest. At trial, Luckett admitted that an investigation into Noel's involvement in and knowledge of the incident should have been conducted before a warrant was obtained for her arrest.

¶29. There is nothing in the record however to support the trial court's determination that Officer Foster acted in reckless disregard of Noel's safety and well-being. Foster's involvement here was limited to the two occasions on which he spoke with third parties concerning the shoplifting incident and when Noel came down to the station to inquire about the warrant for her arrest.

¶30. As Foster stated at trial, he was a police officer faced with an arrest warrant valid on its face for the person standing before him. His options were few. As a police officer sworn to uphold the law, Foster had a duty to execute the warrant as ordered by the issuing court of law. It is, therefore, this Court's conclusion that the trial court erred in finding that Officer Foster acted in reckless disregard of Noel's safety and well-being on these facts. We accordingly reverse and render regarding Officer Foster's liability.[3]

¶31. Concerning Yazoo City's liability in this matter, we conclude there was ample evidence that Officer Luckett officially as an officer with the Yazoo City Police Department acted in reckless disregard for Noel's safety and well-being by failing to investigate before obtaining a warrant for her arrest. Luckett's action, i.e., inserting Noel's name in the affidavit for an arrest warrant based solely upon a car tag number although he knew that Kirby stated two black men stole the steaks, was an intentional act taken in reckless disregard of the adverse effect upon Noel of the wrongful arrest to follow therefrom. *See* Miss. Code Ann. § 11-46-9(1)(c) (Supp. 1997) (providing that a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police . . . protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury).

¶32. Furthermore, Yazoo City finds no refuge in Miss. Code Ann. § 11-46-5(2) which provides in pertinent part:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable to be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violation.

Here, Noel sued Yazoo City for false arrest, not slander or any of the other torts mentioned in the above statute. Furthermore, she sued the police department of Yazoo City. For whatever reason, Noel did not include Luckett as a party to her lawsuit. That decision was entirely within her discretion. Regardless, Luckett acted on behalf of Yazoo City and in his official capacity as a police officer when he filled out the forms and included Noel's name as the shoplifter. Thus whether Luckett's conduct rose to slander *per se* is irrelevant for present purposes because that issue -- that

tort -- is not before this Court.

## II.

¶33. Yazoo City next argues the trial court should have granted the motion for summary judgment based primarily upon the fact that Noel presented no evidence, via affidavit, testimony, or otherwise, to counter or respond to the motion for summary judgment.

¶34. Noel concedes that she did not file a written response to the motion for summary judgment; however she responds that there was an apparent material factual dispute regarding who supplied Noel's name on the Information for Affidavits form and the affidavit without her filing a response to the motion. She further asserts that her failure to file a response was a "mere technical failure to comply with the rules for summary judgment" which should not be used to overturn the lower court's determination as she was "proceeding in good faith."

¶35. We have held that when a motion for summary judgment is filed, the nonmoving party "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *McMichael v. Nu-Way Steel & Supply, Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990) (quoting *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990)). This burden of rebuttal arises, however, only after the moving party has satisfied its burden of proving that no genuine issue of material fact exists. *Hurst v. Southwest Mississippi Legal Services Corp.*, 610 So. 2d 374, 383 (Miss. 1992). Otherwise, there would be nothing for the nonmoving party to rebut. *Id.* Rule 56(e) of the Miss. R. Civ. P. does not require a party to file a formal response to a motion for summary judgment. That rule provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him.

*Miss. R. Civ. P. 56(e)*. (Emphasis added).

¶36. In *Hurst*, we explained that Rule 56(e) does not entitle a party to summary judgment by default where the nonmoving party files no response, for even in the absence of a response the court may enter judgment only "if appropriate," i.e., if no genuine issue of material fact exists. *Hurst*, 610 So. 2d at 383-84. There, we further noted Rule 56(c) "implies that a response is optional by suggesting that '[t]he adverse party prior to the day of the hearing *may* serve opposing affidavits.'" *Id.* The proposition was explained thusly:

> [A] party need not serve such affidavits if what he has already placed before the court demonstrates a triable issue of material fact notwithstanding the opposing party's motion for summary judgment. A trial court must deny a summary judgment motion, even if the non-moving party makes no response whatsoever, so long as all the data before the court, including "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," viewed in the light most favorable to the non-moving party, raises a triable issue concerning a disputed material fact.

*Id.* at 384 (citing Rule 56(c); ***Brown v. Credit Center, Inc.***, 444 So. 2d 358, 362 (Miss. 1983)).

¶37. In the instant case, Yazoo City premised the motion for summary judgment on the proposition that Kirby "signed an affidavit stating that Jacqueline Noel stole two steaks from his store," inferring that the officers were not aware of Kirby's earlier description that two black men stole the steaks and further implying that Kirby knowingly and willfully meant for Noel to be listed as the shoplifter. On the other hand, Noel's complaint and all other discovery material asserted that Kirby did not supply her name as the shoplifter, but that the officers had done so in flagrant disregard of the store manager's previous description of the shoplifters.

¶38. We conclude that the record before the trial court judge indicated a material factual dispute concerning whether the officers or Kirby supplied Noel's name as the shoplifter -- notwithstanding Noel's failure to respond to the motion for summary judgment. We therefore find no merit to this contention.

## III.

¶39. Yazoo City next argues the trial court committed reversible error by allowing counsel for Noel to harass Officer Luckett during her redirect examination. Specifically, issue is taken with the trial court allowing Noel's attorney to repeatedly question Luckett concerning whether he filled out the Information for Affidavits form completely, i.e., with Noel's name therein, before Kirby signed it.

¶40. Noel counters that there was no harassment of Luckett because he vacillated during direct and cross-examination and because his trial testimony was different from what he stated during his deposition. Noel duly notes also that the scope of the examination of a witness is vested within the sound discretion of the trial court, citing ***Foster v. State***, 508 So. 2d 1111 (Miss. 1987).

¶41. In the present case, Officer Luckett was called by Noel as an adverse witness. He initially testified on direct examination that he put Noel's name on the affidavit *after Kirby told him that Noel stole the steaks*. He subsequently admitted that during his deposition he could not remember whether Kirby told him Noel stole the steaks. Then, during cross-examination, Luckett testified that the information about Noel came from Kirby. On redirect, Noel's attorney sought to elicit consistent testimony from Luckett concerning who brought up Noel's name. The trial court acted within its discretion in allowing the redirect examination to continue in light of Luckett's contradictory testimony.

## IV.

¶42. Yazoo City further asserts the trial court committed reversible error by allowing a copy of the notice of Noel's arrest into evidence as it was a copy and not the original and because Noel failed to disclose that she had the original prior to trial.

¶43. Noel responds that the duty to request the original fell on Yazoo City and that the City was not harmed considering the fact a copy was provided several months prior to trial. The trial court agreed with Noel, allowing the copy to be admitted but limiting testimony to the copied portion only.

¶44. A trial court judge has broad discretion in determining whether to admit certain evidence at trial. Unless the judge abuses that discretion as to be prejudicial to the complaining party, the decision to

admit certain evidence will not be reversed. *See Mitcham v. Illinois Central Gulf R.R. Co.*, 515 So. 2d 852, 858 (Miss. 1987) (citing *Young v. Illinois Central Gulf R.R. Co.*, 618 F. 2d 332, 337 (5th Cir. 1980)). Miss.R.Evid. 1002 requires that to prove the content of a writing, the original writing is required, except as otherwise provided by law. One such exception provided by law is Miss.R.Evid. 1003 which states that:

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Miss.R.Evid. 1001(4) defines a duplicate as: "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction or by other equivalent techniques which accurately reproduce the original." Under this definition, a photocopy is a duplicate.

¶45. In the present case, Noel offered a photocopy of the page of a Yazoo County newspaper in which the notice of her arrest was published. Under the rules, this photocopy was a duplicate, and under Miss.R.Evid. 1003, a duplicate can properly be admitted into evidence *unless* there is a genuine issue raised about the authenticity of the original or it would be unfair to admit the duplicate. When Yazoo City objected to the admission of the copy of the notice of arrest offered into evidence by Noel, it did not question the authenticity of the original, arguing that it would be unfair to admit the duplicate because Noel failed to disclose that she was in possession of the original prior to trial.

¶46. As the trial court determined during the preliminary hearing, Yazoo City had a copy of the notice of arrest for several months prior to trial and was not contesting the authenticity of the original. Yazoo City did, however, assert that since the paper was published in Yazoo County and not Noel's resident county of Holmes the relevancy was greatly diminished. However the trial court noted that Noel presented unrefuted testimony that at least three individuals who lived in Holmes County had seen the notice of her arrest in the Yazoo County paper and asked her about it. Furthermore, the trial court gave Yazoo City an opportunity to review the original prior to the preliminary hearing on the matter. Following the perusal of the original, there still was no objection concerning the original's authenticity or how the admission of the duplicate would prejudice or harm them. Instead, the arguments went directly to the weight to be given the copy of the notice of arrest, instead of its admissibility.

¶47. It is this Court's conclusion that the trial court did not abuse its discretion in admitting the copy of the notice of the arrest into evidence because it was relevant on the issue of damages and for the previously stated reasons. Furthermore, we find that Yazoo City failed to show how it was harmed by not reviewing the original paper prior to trial.

V.

¶48. Next, Yazoo City asserts the trial court committed reversible error by allowing Dr. Bartee to give expert opinion testimony. Dr. Bartee was not listed as an expert witness pursuant to the applicable rules, and as a result, the trial court determined that he could testify as the treating physician, not as an expert witness. Yazoo City argues that, despite this ruling, Dr. Bartee still gave

expert opinion testimony during trial.

¶49. Noel contends that any improper expert testimony provided by Dr. Bartee was harmless and that, in many respects, his testimony was favorable to the defense because he could not opine whether Noel would incur more medical bills due to the anxiety she suffered from the false arrest in light of her pre-existing condition of depression. Both parties' contentions are well-taken.

¶50. Miss. R. Civ. P. 26(b)(4)(A)(i) provides that:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

¶51. In the event the initial responses to interrogatories do not adequately divulge the names of experts and the substance of the opinions to which they are expected to testify, such party is under a duty seasonably to supplement prior responses. *Miss. R. Civ. P. 26(f)(1)(B)*. This Court has reasoned that the above rule requires strict compliance to prevent trials from being tainted with surprise and unfair advantage. *See Jones v. Hatchett*, 504 So. 2d 198, 201 (Miss. 1987) (holding that providing the name of the expert four days before trial was not sufficient to discharge the duty required by Rule 26 because "[t]he very purpose of our civil discovery procedures is to prevent such trial by ambush").

¶52. The dispositive issue is whether Dr. Bartee crossed the line of providing testimony as a fact witness and rendered improper expert witness opinions. *See Scafidel v. Crawford*, 486 So. 2d 370, 372 (Miss. 1986) (concluding that two doctors who were not listed as expert witnesses pursuant to pre-trial discovery rules but who testified that the patient was anemic did not cross the impermissible line between fact witnesses and expert witnesses as they did not opine about the effect of the patient's anemia).

¶53. Here, Dr. Bartee's testimony primarily concerned his care and treatment of Noel on the night of her arrest. He informed the court that Noel suffered from a pre-existing condition of depression; however, the revelation that Noel had a pre-existing condition did not constitute impermissible expert opinion as he did not testify about the significance of her depression and the effect the acute anxiety she suffered as a result of being arrested would have on her condition in the future.

¶54. He did, however, render improper expert witness testimony when he stated that the arrest exacerbated Noel's pre-existing depression. Despite this improper testimony, it is this Court's conclusion that the doctor's opinion constituted harmless error considering Noel and her sister's testimony to substantially the same effect and the fact that, taken as a whole, Dr. Bartee's testimony favored Yazoo City as he declined to opine whether Noel's need for medical treatment would be increased because of the arrest.

## VI.

¶55. Finally, Yazoo City complains the trial court's award to Noel of $25,000 in damages was excessive and against the overwhelming weight of credible evidence. Noel argues to the contrary.

¶56. In ***Lewis v. Hiatt***, 683 So. 2d 937, 941 (Miss. 1996), this Court reasoned that "[i]t is primarily the province of the jury [and in a bench trial the judge] to determine the amount of damages to be awarded and the award will normally not 'be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" ***Id.*** (quoting ***Harvey v. Wall***, 649 So. 2d 184, 187 (Miss. 1995)). *See also* Miss. Code Ann. § 11-1-55 (1972) (providing that the "supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal . . . if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence . . .").

¶57. Yazoo City, via Officer Luckett acting within the scope of his employment with the Yazoo City Police Department, was well aware that the Jitney Jungle manager had not accused Noel of being the shoplifter. Despite this information being presented to Luckett, an affidavit stating that Noel shoplifted and a warrant for her arrest based upon the erroneous affidavit were processed and executed. Obviously, there was a flagrant disregard of the information provided by the store manager to Officer Luckett. This flagrant disregard led to Noel (a woman already suffering from depression and taking Prozac) being falsely arrested, detained at the police station for approximately an hour and a half, having criminal shoplifting charges brought against her and having her name and address published in a newspaper as being a shoplifter.

¶58. As the trial court noted in her findings and conclusions, the Yazoo City Police Department instigated the proceedings against Noel by failing to investigate her involvement in the shoplifting incident, although it was known she was not accused of being involved. The false arrest caused Noel to become so upset that she lost consciousness, had to be rushed to the hospital where she cried and pulled out her hair, became very upset when her sister mentioned the incident some two months later and suffered embarrassment and humiliation due to the publication of the notice of her arrest.

¶59. Still further, it is well-settled that to charge a person with theft or larceny is actionable per se and that in slander actions by persons who have been charged with theft or larceny general damages need not be pleaded or proved, but are presumed to result. ***Travis v. Hunt***, 224 Miss. 193, 79 So. 2d 734 (1955). While ***Travis*** is a case involving the tort of slander, injury to reputation is an element of damages for the tort of false imprisonment as well. *See* ***Marrero v. City of Hialeah***, 625 F.2d 499 (5th Cir. 1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (noting that in the common law tort action for false imprisonment, injury to reputation is compensable as an element of damages).

¶60. Thus, this Court concludes that the award of $25,000 was not excessive and was not contrary to the overwhelming weight of credible evidence as the ordeal could have and would have been avoided had there been a simple investigation into Noel's ownership of the truck and her knowledge about or involvement in the incident -- as Officer Luckett admitted there should have been. Additionally, Noel's reputation was tarnished as at least three people read about the shoplifting incident and questioned her about its accuracy.

## VII.

¶61. For the reasons set out above, we affirm the lower court judgment as to all issues except the

liability of Officer Don Foster which we reverse and render.

¶62. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE AND ROBERTS, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH AND WALLER, JJ., NOT PARTICIPATING.**


**MILLS, JUSTICE, DISSENTING:**


¶63. The majority correctly recognizes that this incident arose as a result of the actions of Officer Luckett, who is not a party to these proceedings. His fault, however, was so reckless that it rises to the level of slander *per se*. Therefore, Yazoo City should be exempt from liability under the Mississippi Tort Claims Act, according to Miss. Code Ann. § 11-46-5(2) (Supp. 1997) which states as follows:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

¶64. Justice Banks gave a well written, concise analysis of Officer Luckett's unlawful actions when he wrote,

> Luckett conceded that on the Information for Affidavits form he signed his name as the investigating officer although an investigation was *not* conducted as far as he knew. Nevertheless, Officer Luckett testified that Kirby stated Noel stole the steaks. Counsel for Noel contradicted Luckett's trial testimony with his deposition testimony in which he said that he did not know if Kirby told him that Noel stole the steaks or not.

> After a lengthy redirect examination between Noel's attorney and Luckett, the officer finally conceded that he could not really remember whether Kirby supplied Noel's name. In addition, he admitted that usually when a citizen comes in with a tag number and accuses the owner of the vehicle with that particular tag number of a crime an investigation is conducted. He could not "quite" remember if he investigated Noel as the alleged shoplifter.

¶65. In the seminal case of ***Travis v. Hunt***, 224 Miss. 193, 79 So.2d 734 (1955), this Court held that to wrongfully charge a person with theft or larceny is actionable as slander *per se*. In the case *sub judice*, Officer Luckett did just this. He failed to conduct an investigation of the charges against Noel, but nonetheless charged her with the crime. This reckless disregard for the truth raises his inaction to the level of an intentional tort. ***Id.*** As such, he alone should be responsible for the ensuing harm.

¶66. The majority responds to this truth by stating, "... whether Luckett's conduct rose to slander *per se* is irrelevant for present purposes because that issue -- that tort -- is not before this Court." It is

true that Noel failed to voluntarily present us with the issue. However, the reaches of Noel's petition for relief cannot restrain this Court's duty to evenhandedly administer justice. *See* M.R.A.P. 28 (a)(3) ("...the court may, at its option, notice a plain error not identified or distinctly specified.").

¶67. Noel's complaint is plainly, yet carefully, drawn to hang all liability upon Yazoo City so that she may tap into the town's "deep pockets." We should recognize this artfully pled document, and not allow it to distract us from our duty to find the true culprit in this case, Officer Luckett. He caused the unwarranted criminal charges to be brought against Noel that led to her arrest, detention, and ultimate public humiliation. And, no matter how shallow his pockets, he is the one to blame.

1. Approximately five days before her arrest, Noel was involved in a car accident and had been treated by Dr. Bartee for a headache connected with the car accident. In addition, Noel was diagnosed in 1990 with depression and had been taking Prozac since 1992.

2. Counsel for Noel failed to draw up the order denying the motion for summary judgment. The appellants take issue with this failure; however, the absence of the order is of little consequence in light of the transcript of the hearing which adequately reflects the trial court's ruling.

3. In light of our disposition regarding Officer Foster's liability, he will not be included in the subsequent assignments of error.