# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00965-SCT

*JASON SCARBOROUGH AND MISSISSIPPI MUNICIPAL WORKERS' COMPENSATION GROUP*

*v.*

*WANDA J. LOGAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2022 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | WILLIE T. ABSTON |
| | KEITH D. OBERT |
| | WILLIAM F. BROWN |
| | SAMUEL FENTON CREASEY |
| | CLAIRE K. ROBINETT |
| | R. DOUGLAS VAUGHN |
| | CHRISTOPHER H. CORKERN |
| | JOHN MICHAEL COLEMAN |
| | JOSEPH W. McDOWELL |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | KEITH D. OBERT |
| | WILLIE T. ABSTON |
| | WILLIAM F. BROWN |
| | JOSEPH W. McDOWELL |
| ATTORNEYS FOR APPELLEE: | R. DOUGLAS VAUGHN |
| | PHILLIP M. LEMERE |
| | PEYTON M. POPE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | ON DIRECT APPEAL: DISMISSED AS MOOT. ON CROSS-APPEAL: REVERSED AND REMANDED - 10/17/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-CA-00720-SCT

*JASON SCARBOROUGH*

*v.*

*WANDA J. LOGAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2023 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEITH D. OBERT |
| | WILLIE T. ABSTON |
| | WILLIAM F. BROWN |
| ATTORNEYS FOR APPELLEE: | R. DOUGLAS VAUGHN |
| | PHILLIP M. LEMERE |
| | PEYTON M. POPE |
| NATURE OF THE CASE: | PERSONAL INJURY |
| DISPOSITION: | ON DIRECT APPEAL: DISMISSED AS MOOT. ON CROSS-APPEAL: REVERSED AND REMANDED - 10/17/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    Jason Scarborough, an officer with the Pearl Police Department, was involved in a car accident with Wanda Logan, and sustained multiple severe injuries. A jury found Scarborough 60 percent at fault and Logan 40 percent at fault and awarded Scarborough $1.2 million. The trial court reduced this award to $480,000 to reflect Scarborough's apportioned fault. Scarborough appeals, and Logan cross-appeals. Because the trial court abused its discretion by allowing expert testimony from a witness who was never qualified or tendered as an expert witness, we reverse the final judgment and remand the case for a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On July 29, 2016, Scarborough was on patrol duty when he received a dispatch call to respond to an active burglary and home invasion. Scarborough responded to the call and activated the blue lights on his patrol vehicle, but not his siren. While driving through a residential neighborhood with a speed limit of 25 miles per hour, Scarborough increased his speed to 79 miles per hour. Scarborough approached the intersection of Pemberton Drive and Chotard Avenue in the residential neighborhood and observed a vehicle—driven by Logan—sitting at the stop sign on Chotard and waiting to turn left onto Pemberton. Seemingly without noticing Scarborough's vehicle, Logan pulled out onto Pemberton at a slow rate of speed. Scarborough attempted to pull around the front of Logan's vehicle by entering into the left lane of traffic. He was unsuccessful, however, and the vehicles collided. At the time the accident occurred, Scarborough was traveling at a rate of 51 miles per hour.

¶3.     On February 8, 2017, Scarborough[1] filed suit against Logan, alleging that as a result of her negligence he suffered severe injuries, including a concussion, four broken ribs, a broken right femur and right tibia, and a broken left kneecap and left foot. Scarborough requested damages totaling $3,042,082.71 for past and future medical expenses, past and future lost earnings, loss of household production, and pain and suffering.

---

[1]This case is consolidated. The Mississippi Municipal Workers' Compensation Group (MMWCG) intervened in the case filed by Scarborough against Logan. MMWCG seeks reimbursement for workers' compensation benefits paid to Scarborough from any amount that he would receive in damages. MMWCG stated in its brief that it "is exactly aligned with . . . Scarborough[.]" MMWCG's brief sets forward its position that the trial court erred by reducing the jury award. Because they take the same position, we collectively refer to MMWCG and Scarborough as "Scarborough."

¶4.     At trial, Scarborough sought to introduce the deposition of Shane Remy as an expert witness in accident reconstruction. Logan objected, raising the fact that Remy had not been qualified or tendered as an expert witness in the deposition. The trial court, nevertheless, allowed the deposition to be read to the jury. Remy's deposition testimony consisted of what actions Logan could have taken to avoid the accident. Aside from Scarborough's own testimony, Remy offered the only evidence regarding Logan's fault in the collision.

¶5.     After deliberating, the jury returned a verdict finding Scarborough 60 percent at fault and Logan 40 percent at fault. The jury awarded Scarborough $1.2 million, almost exactly 40 percent of the total damages Scarborough requested. This award was reduced by the trial court to $480,000 to reflect the 60 percent fault apportioned to Scarborough. Following the entry of final judgment, Scarborough filed a motion to alter or amend the judgment. He argued that the trial court erred by reducing the jury's award because the jury had already reduced the award based on his apportioned percentage of fault. Specifically, Scarborough pointed to jury instruction four, which stated:

> If you find that Wanda J. Logan was negligent and that Jason Scarborough was also negligent and that the negligence of each combined to proximately cause the accident, then in arriving at your verdict for Jason Scarborough, *you must reduce the amount he would otherwise receive* by the proportion that his own negligence contributed to the cause of the collision.

(Emphasis added.) The court denied the motion at a hearing, finding that "the jury was instructed to first assess the damages . . . and then apportion fault. Nowhere in the instructions, as the Court reads it, was the jury instructed to go ahead and make any reductions on their own." Scarborough appealed, and Logan cross-appealed.

4

**ISSUES PRESENTED**

¶6.     Scarborough raises the following issues on direct appeal:

    I.      Whether the trial court abused its discretion by reducing the jury award.

    II.    Whether the trial court abused its discretion by granting Logan's motion to deposit and/or interplead funds.

Logan raises the remaining issues on cross-appeal:

    III.   Whether the trial court erred by allowing the deposition testimony of Remy.

    IV.   Whether Bill Brister testified to matters outside the scope of his expertise.

    V.    Whether the trial court erred by denying Logan's motion for a directed verdict based on the wrongful conduct rule.

This Court limits its review to issue three because it is dispositive and requires reversal and remand for a new trial. We will also briefly address issue one, as it is relevant and necessary to avoid repeating.

**DISCUSSION**

**I.      Whether the trial court erred by allowing Remy's deposition testimony.**

¶7.     "A trial court's admission of testimony is reviewed for an abuse of discretion." ***Chaupette v. State***, 136 So. 3d 1041, 1045 (Miss. 2014) (citing ***Foster v. Noel***, 715 So. 2d 174, 181 (Miss. 1998)). "Before providing expert opinion testimony, a witness must be qualified, tendered, and accepted as an expert witness under Rule 702 of the Mississippi Rules of Evidence." *Id.* (citing ***Cotton v. State***, 675 So. 2d 308, 312 (Miss. 1996)). Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> **(b)** the testimony is based on sufficient facts or data;

> **(c)** the testimony is the product of reliable principles and methods; and

> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

"The question of whether an individual is qualified to testify as an expert is committed to the sound discretion of the trial court." *Duplantis v. State*, 708 So. 2d 1327, 1338-39 (Miss. 1998) (internal quotation mark omitted) (quoting *Cooper v. State*, 639 So. 2d 1320, 1325 (Miss. 1994)). "If expert testimony is offered from an unqualified witness, there is reversible error." *Hobgood v. State*, 926 So. 2d 847, 854 (Miss. 2006) (citing *Cotton*, 675 So. 2d at 312). However, the Court "may reverse a case only if[] the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party." *Chaupette*, 136 So. 3d at 1045 (internal quotation marks omitted) (quoting *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 633 (Miss. 2007)) (applying harmless error analysis to the admission of unqualified expert witness testimony).

¶8. At trial, Scarborough was unable to secure the presence of Shane Remy, whom he had hired as an accident reconstructionist. In lieu of live testimony, Scarborough sought to introduce Remy's deposition, taken by Logan, pursuant to Mississippi Rule of Civil Procedure 32(a)(3)(B), which allows the use of deposition testimony at trial if the witness

6

is out of state. Logan objected, stating, "[n]ow the challenge I think that we all recognize is that Mr. Remy isn't qualified in the deposition. His CV wasn't made an exhibit or testified about." Despite this, the trial court allowed Remy's deposition to be read and acknowledged that Logan had a continuing objection to Remy's expert opinion testimony.

¶9. In the deposition, Remy testified that he was hired "to reconstruct the accident based off of the data available, the evidence available, and determine what different actions by Ms. Logan would have prevented the accident." Remy stated that Logan would have been able to see Scarborough's vehicle three seconds prior to the accident. Remy also stated that it was possible Logan could have seen Scarborough's vehicle even before three seconds to impact if she had "studied through the bush," referring to a shrub that was planted on the corner of Pemberton and Chotard. Remy's ultimate conclusion was that "[b]ased off of our reconstruction, we determined that [Logan] could see past the shrubbery that's been talked about here, the bush, [and could have observed] the officer approaching three seconds before impact." Remy testified that a person using reasonable care observing an emergency vehicle with lights coming towards them would have a reaction time of one and a half seconds. Specifically, Remy opined that "[a]fter Ms. Logan had an opportunity to see the officer's vehicle coming, if she would have responded within a half second," or one and a half seconds, the accident "would have been avoided[.]"

¶10. Scarborough also offered testimony regarding Logan's fault in the accident. He stated that she was traveling at a very slow rate of speed and that he never saw Logan look in his direction, to her left, before pulling out in front of him. Scarborough also testified about the

7

amount of emergency lights on his vehicle that were activated when the incident occurred—"[w]ell over 140." This testimony, along with Remy's, was the only testimony offered to place fault upon Logan for the accident.

¶11.    In her cross-appeal, Logan argues that the inclusion of Remy's deposition testimony was error because he was not qualified or tendered as an expert witness in his deposition. The record does not include Remy's CV or any other evidence of his expertise in the field of accident reconstruction. In his deposition, Remy stated that he was an accident reconstructionist employed by Quest Engineering and that he endorsed his designation as an expert witness.[2] At no point in his deposition did Remy offer any testimony about his credentials, knowledge, skill, training or educational background that would indicate his expertise in the field of accident reconstruction, nor was he ever asked to give such information. In response, Scarborough states that Logan has waived this argument by failing to specifically object to the deposition at trial. Logan did, however, specifically object at trial, and the issue is preserved for review by this Court. Before the deposition was read, Logan's counsel stated that an objection would be made because Remy was not qualified in the deposition. Furthermore, when Remy offered any conclusive expert opinion, Logan objected, and the trial court recognized a continuing objection to the expert opinion testimony. Logan did not waive this issue.

¶12.    Alternatively, Scarborough argues that Logan acknowledged Remy's status as an

---

[2]The designation of Remy as an expert witness only stated his job title and that he was "an expert in accident reconstruction." The designation did not contain any of Remy's qualifications.

expert witness throughout the deposition by questioning him about the expert opinions he would offer at trial. Scarborough also points to Remy's designation as an expert witness prior to trial. Notably, Scarborough offers no law to support his argument that this would excuse the complete absence of evidence of Remy's qualification as an expert witness. "The proponent of expert testimony has the burden of establishing the admissibility of such testimony." *Univ. of Miss. Med. Ctr. v. Kelly*, 358 So. 3d 1054, 1058 (Miss. 2023) (internal quotation marks omitted) (quoting *Corrothers v. State*, 148 So. 3d 278, 328 (Miss. 2014) (Randolph, P.J., concurring)).

¶13.    We find *Kelly* to be instructive here. In *Kelly*, the University of Mississippi Medical Center (UMMC) filed an interlocutory appeal in this Court, arguing that Kelly's expert witness was unqualified to testify as an expert because Kelly failed to present evidence to support the witness's expertise. *Id.* at 1056. Kelly failed to attach his witness's CV as an exhibit before the trial court, and it was not a part of the record on appeal. *Id.* at 1058. The only evidence of the witness's expertise was an affidavit offered by the witness that stated that he was "licensed, trained, and [had] experience in the medical field[.]" *Id.* Finding that the witness had not been qualified as an expert, this Court reversed the judgment of the trial court and rendered summary judgment in favor of UMMC. *Id.* This Court held that "[w]ithout any record of training, experience, or specialization in the specific area of medicine in question here, this Court cannot find that [the witness] met this Court's threshold to be qualified as an expert witness." *Id.*

¶14.    In the present case, Scarborough presented even less evidence of Remy's

9

qualifications as a witness. There was no affidavit from Remy in the record, no CV listing his qualifications and his deposition testimony did not contain any discussion of his qualifications. The trial court abused its discretion by allowing the deposition testimony of Remy absent any evidence of his qualifications as an expert in the field. *Id.*

¶15.    The inclusion of expert testimony from an unqualified witness is subject to harmless error review. *Chaupette*, 136 So. 3d at 1045. This Court "may reverse a case only if[] the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party." *Chaupette*, 136 So. 3d at 1045 (internal quotation marks omitted) (quoting *Merrill*, 978 So. 2d at 633). The inclusion of Remy's testimony prejudiced Logan and, therefore, was not harmless error because it constituted the only evidence of her fault aside from Scarborough's own recollection of the events. Logan presented her own expert, Jerry Key, in accident reconstruction, who testified about the visibility of Scarborough's vehicle prior to the accident as well as his rates of speed leading up to the accident. Key also testified about Scarborough's use of the antilock brakes on his vehicle. Key stated that according to the data, the antilock brakes were not engaged, meaning that "there was a firm brake but not a – not a really hard brake." Logan's own recollection of the events was also introduced via her deposition. Logan stated that she looked both ways before pulling out onto Pemberton. She stated that "[n]othing was coming. I pulled out. And then wham." Logan testified that she never saw Scarborough's emergency lights; otherwise, she said, she would have yielded. Without Remy's testimony, the jury would only have Scarborough's testimony to evaluate Logan's fault weighed against the evidence presented

10

by Logan. The inclusion of Remy's unqualified expert testimony requires reversal and a new trial.

### II. Whether the trial court abused its discretion by reducing the jury award.

¶16. Although Logan's cross-appeal of Remy's unqualified expert testimony is dispositive, we take a moment to briefly address the reduction of the jury award. "Generally speaking, our law presumes that jurors follow the trial judge's instruction, as upon their oaths they are obliged to do." *Robinson v. State*, 247 So. 3d 1212, 1233 (Miss. 2018) (internal quotation marks omitted) (quoting *Parker v. Jones Cnty. Cmty. Hosp.*, 549 So. 2d 443, 446 (Miss. 1989)). "The law presumes that the jury is competent, that the jury followed the court's instructions, and that the verdict reflects the jury's intent." *Lampkin Constr. Co., Inc. v. Sand Specialties & Aggregates, LLC*, 179 So. 3d 1095, 1103-04 (Miss. 2015) (citing *Merchant v. Forest Fam. Prac. Clinic, P.A.*, 67 So. 3d 747, 755 (Miss. 2011)). "Under the comparative negligence doctrine, negligence is measured in terms of percentage, and any damages allowed shall be diminished in proportion to amount of negligence attributable to the person for whose injury, damage or death recovery is sought." *Coho Res., Inc. v. Chapman*, 913 So. 2d 899, 911 (Miss. 2005) (citing *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 582 (Miss. 1993)).

¶17. In this case, the jury was specifically instructed to *reduce* Scarborough's award by his apportioned percentage of fault. The jury is presumed to have followed that instruction and to have reduced Scarborough's award based on his apportioned fault. Due to the clear language directing the jury to reduce the award and the fact that the jury's award was almost

exactly 40 percent of the requested amount of damages, we find that the trial court abused its discretion by further reducing the award in the final judgment and by denying the motion to amend or alter the judgment. Although the jury instructions in this case contained no error per se, the best practice for comparative negligence cases is to instruct the jury to calculate the total amount of damages and to apportion fault but not to reduce the award. This allows the court to compute the reduction of the total award based on the amount of fault apportioned to the parties and helps prevent any unnecessary confusion.

## CONCLUSION

¶18. The inclusion of Remy's unqualified expert testimony was an abuse of discretion. Therefore, we reverse the judgment of the trial court and remand the case for a new trial. Because the issue of unqualified expert testimony before the Court on cross-appeal is dispositive, we dismiss as the moot the issues before the Court on direct appeal.

¶19. **ON DIRECT APPEAL: DISMISSED AS MOOT. ON CROSS-APPEAL: REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**