796 So.2d 276 (2001)
Alma HILL, Wife of Decedent, Thomas Hill, Individually and on Behalf of Thomas Hill, Appellant,
v.
Clark G. WARDEN, M.D., Appellee.
No. 2000-CA-01229-COA.
Court of Appeals of Mississippi.
October 2, 2001.
*277 William Chad Stelly, Attorney for Appellant.
Stephen Walker Burrow, Pascagoula, Attorney for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the Court:
¶ 1. Alma Hill, the wife of Thomas Hill, filed a complaint against Clark G. Warden, M.D., Singing River Hospital, and Singing River Hospital Systems Foundation as an individual and on behalf of Thomas Hill, the decedent, for medical malpractice. The actions against Singing River Hospital and Singing River Hospital Systems Foundation were dismissed, and the action proceeded against Dr. Warden. Dr. Warden filed a motion for summary judgment which the trial court granted. Feeling aggrieved by the granting of this motion, Ms. Hill filed a timely appeal. Ms. Hill presents several issues: (1) whether the trial judge abused his discretion when he denied Ms. Hill further time to conduct discovery before granting the motion for summary judgment, (2) whether the trial court erred in granting Dr. Warden's motion for summary judgment as it pertains to Ms. Hill's claim for medical malpractice, and (3) whether the trial court erred in granting Dr. Warden's motion for summary *278 judgment regarding Ms. Hill's claim for lack of informed consent. We find that all of these issues are without merit and affirm the trial court.

FACTS
¶ 2. On February 23, 1998, Alma Hill, wife of the decedent Thomas Hill, filed a complaint in her individual and representative capacity against Clark G. Warden, M.D., Singing River Hospital, and Singing River Hospital Systems Foundation. Subsequently, Singing River Hospital and Singing River Hospital Systems Foundation were dismissed from the case. However, the case proceeded against Dr. Warden. Therefore, we focus on Ms. Hill's complaint as it pertained to Dr. Warden.
¶ 3. The complaint against Dr. Warden alleged that on March 1, 1996, he committed medical malpractice when he severed Mr. Hill's hypoglossal nerve while performing a right carotid endarterectomy to cease the blockage of blood going to his brain. Primarily, Ms. Hill contended that as a result of the severing of the hypoglossal nerve, Mr. Hill experienced a loss of control of bodily functionhe could not eat solid food and could not engage in regular family activities. The complaint further alleged that the deterioration he suffered eventually resulted in his death. Additionally, Ms. Hill asserted that Dr. Warden did not inform Mr. Hill of the risks involved with the surgical procedure. Dr. Warden answered the complaint and thereafter, the case proceeded into the discovery phase.
¶ 4. On May 21, 1998, counsel for Dr. Warden filed a notice of service of discovery. On May 29, 1998, counsel for Ms. Hill requested additional time to respond to the interrogatories and request for production of documents. The record reflects that this motion was granted and an order was entered extending the time until July 10, 1998. On November 30, 1998, Dr. Warden filed a motion to compel supplemental discovery responses from Ms. Hill. Ms. Hill still had not responded completely to the interrogatories and request for production of documents. On January 8, 1999, the trial court entered an order compelling Ms. Hill to supplement her discovery answers. Interrogatory number six which addressed expert testimony was among those to which she was ordered to respond. On September 16, 1999, Dr. Warden filed a motion for summary judgment.
¶ 5. The motion for summary judgment contended that on May 21, 1998, discovery was propounded to Ms. Hill. Dr. Warden alleged that within his interrogatories he had sought the designation of experts. In a supplemental response to the request which was dated January 12, 1999, Ms. Hill stated that no expert had been retained; however, once retained the answer would be amended. Nevertheless, as of September 16, 1999, the date the motion for summary judgment was filed, there had been no further supplementation regarding expert testimony.
¶ 6. An initial hearing on the motion for summary judgment was held on November 5, 1999. At this hearing Ms. Hill requested a continuance. The continuance was granted and scheduled for November 12, 1999. At these hearings Ms. Hill's affidavits were submitted and made a part of the record. Nevertheless, these affidavits went primarily to the lack of informed consent, and while the record states that one affidavit purported that Dr. Warden had stated that he had "made a mistake," the record was never supplemented with a name of an expert witness to support this contention. On June 22, 2000, the trial court granted the motion for summary judgment.

DISCUSSION

I. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN *279 HE DENIED MS. HILL FURTHER TIME TO CONDUCT DISCOVERY BEFORE GRANTING THE MOTION FOR SUMMARY JUDGMENT.
¶ 7. Ms. Hill claims that the trial court's granting of the summary judgment motion was premature because no discovery deadline or trial date had been set and additional time for trial preparation on the issues was needed. Primarily, Ms. Hill argues that the trial court erred because she had not received a certified, true and complete copy of Dr. Warden's chart associated with the treatment of Mr. Hill, nor had she taken the deposition of Dr. Warden regarding this procedure. Ms. Hill contends that the denial of an opportunity to continue discovery and take the deposition of Dr. Warden was an improper sanction. However, in response to this we look to the case of Prescott v. Leaf River Forest Products, 740 So.2d 301, 307 (¶ 13) (Miss. 1999), which examined the issue of granting a summary judgment when the nonmoving party claims he or she is prejudiced in answering a motion for summary judgment because discovery has not been completed.
¶ 8. The Mississippi Supreme Court made the following comments regarding the application of Mississippi Rules of Civil Procedure Rule 56(f) to this situation and in part, stated:
The party opposing the motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery. This is because rule 56(f) is not designed to protect the litigants who are lazy....
Id. at 308 (¶ 13). (citations omitted).
¶ 9. Counsel for Ms. Hill stated to the trial court that he wished to take Dr. Warden's deposition to obtain "[m]ore details as to the procedure itself, as well as an explanation of the absence of a signed patient consent form which would explain the possible complications of the surgery." In Prescott, the court stated that an abuse of discretion standard is applied to a trial judge's decision to grant a summary judgment before discovery is completed. Id. at 307(¶ 13). In light of the above statement and Ms. Hill's nineteen month delay in attempting to take Dr. Warden's deposition, we do not find that the trial judge abused his discretion. The statement regarding the hope of obtaining more details of the procedure is very broad, especially in light of the fact that Ms. Hill had received a copy of the operative report. Additionally, a copy of the medical authorization was subsequently produced and Ms. Hill was allowed to respond to its production in a supplemental affidavit prior to the granting of the motion. Accordingly, this issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN GRANTING DR. WARDEN'S MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO MS. HILL'S CLAIM OF MEDICAL MALPRACTICE.
¶ 10. The lower court is vested with the discretion to grant a summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Collier v. Trustmark Nat'l Bank, 678 So.2d 693, 695 (Miss.1996); M.R.C.P. 56. The standard of review on appeal when a trial judge grants a motion for summary judgment allows this Court to review the record de novo to determine if there was error on the part of the trial judge in granting the motion. Id. In a motion for summary judgment, the movant and non-movant maintain burdens of production *280 paralleling their burdens of proof they would sustain at trial. Id. at 696. The party which seeks to recover for negligent treatment and/or performance must show by a preponderance of the evidence that the defendant had a legal duty, that he breached that duty when he failed to conform to the required standard of care, that this breach was the proximate cause of the injury, and that damages were suffered. Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987). The party that is seeking summary judgment has the burden of persuading the trial judge that there are no genuine issues of material fact, and that based upon the facts, he is entitled to a summary judgment. Id.
¶ 11. Mississippi Rules of Civil Procedure Rule 56(b) states the following regarding when a summary judgment may be requested by a defendant:
(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
¶ 12. Ms. Hill argues that the granting of the motion for summary judgment in favor of Dr. Warden was in error because there are genuine issues of material fact that remain in dispute. Namely, she argues that the hospital operative chart note regarding the carotid endarterectomy performed on Mr. Hill states that the hypoglossal nerve was severed. Additionally, Ms. Hill contends that Dr. Warden stated to her that he had "made a mistake." Therefore, a genuine issue of material fact existed regarding whether Dr. Warden was negligent in severing the hypoglossal nerve.
¶ 13. A review of the record discloses that Ms. Hill was given a copy of Mr. Hill's medical chart regarding the surgery. As stated by Ms. Hill, the severing of the hypoglossal nerve is documented in Dr. Warden's operative report of the surgery performed on March 1, 1996. This report documents a description of the procedure and is signed by Dr. Warden. In fact, Dr. Warden does not deny that he severed the hypoglossal nerve; however, in an affidavit submitted by Dr. Warden he asserts that this was not a breach of the standard of care. Dr. Warden cited the case of Phillips v. Hull, 516 So.2d 488, 491 (Miss. 1987), which states that in order to overcome a motion for summary judgment when the issue is not within the common knowledge of laymen, in the case of medical negligence, the plaintiff is required to offer by affidavit, or otherwise, expert testimony which reveals that there has been a breach of the standard of care by the doctor in question. Therefore, with or without a certified copy of the report, it was incumbent upon Ms. Hill to provide expert testimony which stated that the severing of the hypoglossal nerve during the surgery was a breach of the standard of care.
¶ 14. Dr. Warden filed his motion for summary judgment on September 16, 1999. Dr. Warden argued in his motion for summary judgment and again in his brief that there was no evidence that would indicate that he had breached the standard of care or that the severing of the hypoglossal nerve was the proximate cause of Mr. Hill's deteriorating health after the surgery.
¶ 15. Ms. Hill argues that expert testimony is not necessary at this point in the case because Dr. Warden stated to her that he had "made a mistake." Even if we assume that this statement was in fact made by Dr. Warden, it does not alleviate the need for expert testimony. The fact that he might have stated that he had made a mistake does not establish a *281 breach of the standard of care or establish the proximate cause between the surgery and Mr. Hill's death.
¶ 16. The record discloses that Dr. Warden moved for a summary judgment after there was no response to his interrogatory regarding the designation of experts. The filing of the motion occurred approximately nineteen months after Ms. Hill had filed her complaint. During this time no expert was designated to support the allegations in her complaint. Additionally, the facts above show that prior to Dr. Warden filing his motion, Ms. Hill had been ordered to respond to his discovery requests. Even after the motion for summary judgment was filed, Ms. Hill was granted two continuances regarding the motion. It also appears that while Ms. Hill finally made an attempt to obtain an expert witness, she did not do so until after she received Dr. Warden's motion for summary judgment. She never provided a sufficient reason as to why she had delayed in an her attempt to obtain an expert.
¶ 17. Since this Court assumes that the surgical procedure preformed on Mr. Hill is not within the common knowledge of laymen, expert testimony was required to meet the burden of proof by a preponderance of the evidence and establish the element of the breach of the standard of care, as well as proximate cause. In fact, the trial judge inquired about the function of the hypoglossal nerve. A review of the record discloses that Ms. Hill was given ample time to designate an expert to meet her burden and establish both proximate cause and damages, and she failed to do so. Therefore, we find that the trial judge did not err in granting Dr. Warden's motion for summary judgment, and accordingly, we affirm the decision of the trial court.

III. WHETHER THE TRIAL COURT ERRED IN GRANTING DR. WARDEN'S MOTION FOR SUMMARY JUDGMENT REGARDING MS. HILL'S CLAIM FOR LACK OF INFORMED CONSENT.
¶ 18. Ms. Hill argues that genuine issues of material fact exist because the patient consent form, associated with the procedure, failed to identify any potential complications with the procedure. Dr. Warden rebuts this argument by asserting that Ms. Hill's claim must fail because she failed to offer any expert testimony that stated the lack of informed consent proximately caused the wrongful death of, or injury to, Mr. Hill.
¶ 19. We note that the medical authorization for Mr. Hill's surgery is not contained in the record. For some unexplained reason it is missing. Nevertheless, Ms. Hill acknowledges in one of her affidavits that in light of her husband's medical condition and Dr. Warden establishing that there was an imminent need for the surgery, she signed his name on the "authorization for and administration of anesthesia and for performance of operations and other procedures including photographs/videos for medical or legal purposes." Ms. Hill states that the statements within the authorization did not inform them of any possible complications associated with the surgery. On the other hand, an affidavit submitted by Dr. Warden alleges that the Hills were apprized of the complications and risks of the surgery, including possible nerve damage.
¶ 20. When an individual claims that a physician has breached the duty to obtain the patient's informed consent the familiar tort elements apply: duty, breach, causation, and damage. Phillips v. Hull, 516 So.2d 488, 492 (Miss.1987). If there is a physician-patient relationship, the doctor automatically has the duty to inform and *282 procure the consent of the patient as it relates to the proposed treatment. Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1363 (Miss.1990). However, the individual claiming a breach of this duty must make more than mere allegations to substantiate that a breach has occurred. Id. In Palmer, the Mississippi Supreme Court held:
Once proof of duty and breach of that duty is provided, the plaintiff [i.e., Ms. Hill] is required to produce evidence of two sub-elements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had she been properly informed of the risks, alternatives, and so forth. And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition. That is, plaintiff must show that she would not have been injured had the appropriate standard of care been exercised. Generally, proof of the later sub-element requires expert testimony that the defendant's conduct not the patient's original illness or injuryled to the worsened condition.
Palmer, 564 So.2d at 1364 (emphasis theirs) (citations omitted).
¶ 21. Under this case law, not only do we question whether Ms. Hill established the element of a breach of the duty to obtain informed consent, but it is abundantly clear that she failed to create a factual issue regarding the last two elements of the tort claim. By languishing in her production of an expert witness, she did not have the evidence to establish the elements of proximate cause and damages. Therefore, this issue is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY GRANTING SUMMARY JUDGMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, MYERS AND CHANDLER, JJ., concur. IRVING, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY KING, P.J. BRANTLEY, J., NOT PARTICIPATING.
IRVING, J., DISSENTING:
¶ 23. My colleague, writing for the majority, has written well. However, because I believe it was an abuse of the trial court's discretion not to allow further discovery in this case, I respectfully dissent.
¶ 24. I agree with the majority that Hill had an obligation to produce an expert witness to testify as to the breach of the standard of care regarding the severing of the hypoglossal nerve. However, since it was not disputed that Dr. Warden severed the nerve, I believe justice dictates that Hill be given the further opportunity to produce, if indeed she can, a liability expert. Having said that, I am mindful that Dr. Warden filed his discovery, seeking the identity of Hill's expert, on May 21, 1998, and Hill had not produced such expert by November 12, 1999, the date of the hearing on Dr. Warden's motion for summary judgment. This fact, however, has to be considered in light of the fact that no trial date had been set in this case, and as best as I can tell, there had not been a general discovery order entered setting forth deadlines for depositions, requests for admission, interrogatories, etc.
¶ 25. Further, Hill was in somewhat of a struggle to obtain what she considered adequate discovery from Dr. Warden. On or about August 21, 1998, Hill requested certain discovery from Dr. Warden. Apparently, that discovery was answered timely but did not include a certified copy of Dr. Warden's chart associated with his treatment of Hill's decedent. On November *283 2, 1999, just ten days prior to the hearing on the motion for summary judgment, Hill received the complete medical chart. Apparently, prior to then, she had been in possession of only portions of the chart.
¶ 26. This case, in my judgment, bears a striking similarity to Burkes v. Fred's Stores of Tennessee, Inc., 768 So.2d 325 (Miss.Ct.App.2000). The defendant in Burkes made the same argument, as does Dr. Warden here, concerning the need for expert testimony to establish liability. Id. at (¶ 6). We agreed with the Burkes defendants that expert testimony was required for certain aspects of the plaintiff's case. Id. at (¶ 21). However, we determined, on the facts of that case, that material issues of fact existed notwithstanding the plaintiff's failure to supplement her answers to the defendants' interrogatories.
¶ 27. Though I do not find Burkes determinative of our case here, I do find the discussion there helpful, for we made it clear that the grant of summary judgment and dismissal of a case should be utilized rarely as a means of punishing a party for discovery violations. Id. at (¶ 12).
¶ 28. In Thompson v. Patino, 784 So.2d 220 (Miss.2001), Thompson filed a complaint against Dr. Patino and others on February 16, 1994. Id. at 221. On March 11, 1994, the defendants served discovery requests on Thompson, and Thompson did not answer it within the time allowed by Mississippi Rules of Civil Procedure. Id. The defendants filed a motion to compel in May and June 1994. "On June 17, 1994, the circuit court ordered Thompson to respond to the discovery within seven days." Thompson responded on June 24, 1994, and identified her experts but did not state what the experts' opinions would be. Id. On July 14, 1994, Thompson filed a motion for extension of time to conduct discovery, and on February 10, 1995, she filed an amended complaint to add an additional defendant. Id. at 222. Thereafter, an agreed order was entered on September 25, 1995, extending discovery for ninety days. Id. Over a year later, in October 1996, Thompson requested a sixty-day extension of discovery. Id. This request was denied by the circuit judge. "On February 5, 1997, approximately three years after Thompson filed her lawsuit against Patino, Patino filed a motion to dismiss, or, alternatively for summary judgment." Id. At the time the motion was filed, Thompson had not supplemented her responses to interrogatories to state what her experts would testify to. She did so five days later, and four days thereafter, Dr. Patino filed a motion to strike her supplemental responses. Id. The trial court granted Dr. Patino's motion and ultimately granted summary judgment in favor of Dr. Patino. Id.
¶ 29. On appeal, this Court affirmed the trial court. The Mississippi Supreme Court granted certiorari and reversed, finding that the trial court abused its discretion in striking Thompson's supplemental responses and affidavit of her expert witness. Thompson, 784 So.2d at 221. In doing so, the supreme court noted that no trial date had been set at the time of the trial court's action. Id. at 223.
¶ 30. In our case, Warden requested the identity of Hills's experts on May 21, 1998. Hill responded that no expert has been retained but that her answer would be supplemented when an expert was retained. When the motion for summary judgment was filed on September 16, 1999, Hill had not designated an expert. I am keenly aware that our case differs from Thompson in that in Thompson, the expert had been designated and Thompson eventually supplemented her answers to the interrogatories propounded to her and submitted an affidavit from the expert in *284 opposition to the motion for summary judgment. However, that supplementation was not made until approximately three years after the defendant requested the information on her experts. In our case, the motion for summary judgment was filed approximately one year and four months after the request was made for the information on Hill's experts. Therefore, in the case before us, Hill has not been as dilatory, from the standpoint of the passage of time, as Thompson was in Thompson. The net effect of what the trial judge did here was to penalize Hill for not designating an expert after being requested to do so by the Defendant Warden. That might have eventually become the proper remedy, but I do not believe that time had arrived when the motion was granted. Accordingly, I dissent.
KING, P.J., JOINS THIS SEPARATE OPINION.