15 So.3d 427 (2008)
Daron MAXWELL and Peggy Maxwell, Individually and on Behalf of the Wrongful Death Beneficiaries of Walter Maxwell, Deceased, Appellants,
v.
BAPTIST MEMORIAL HOSPITAL-DESOTO, INC., Appellee.
No. 2005-CA-01518-COA.
Court of Appeals of Mississippi.
May 27, 2008.
Rehearing Denied May 19, 2009.
Certiorari Denied August 20, 2009.
*429 Dale Danks, Pieter John Teeuwissen, Ridgeland, attorneys for appellants.
John H. Dunbar, Josiah Dennis Coleman, Oxford, attorneys for appellee.
EN BANC.
CHANDLER, J., for the Court.

MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing filed by Baptist Memorial Hospital-DeSoto, Inc. (Baptist), is granted. The original opinion issued in this case is withdrawn, and the following opinion is substituted therefor.
¶ 2. Daron Maxwell and Peggy Maxwell, collectively, the Maxwells, filed a medical negligence action against Baptist, alleging that Baptist's negligence caused the death of their father, Walter Maxwell. After discovery, Baptist moved for summary judgment, alleging that the expert "opinions provided by [the Maxwells] are insufficient to establish a prima facie case of medical negligence against [Baptist's] nurses in that they fail to set forth the standard of care or identify the manner in which the nurses allegedly breached the standard of care." The Maxwells waited until the day of the summary judgment hearing to file a response with affidavits from expert witnesses. The Circuit Court of DeSoto County struck the Maxwells' response as untimely and granted Baptist's motion for summary judgment.
¶ 3. The Maxwells have appealed and assert that they produced sufficient evidence to survive Baptist's motion for summary judgment or, alternatively, that they should have been granted a continuance to provide more detailed affidavits. We find that the trial court acted within its discretion in striking the experts' affidavits produced by the Maxwells and affirm the grant of summary judgment in favor of Baptist.

FACTS
¶ 4. On December 31, 2002, the Maxwells, individually and on behalf of the wrongful death beneficiaries of their father, Walter Maxwell, filed a complaint against Baptist. In their complaint, the Maxwells alleged that:
On May 11, 2002, Walter Maxwell was admitted to Baptist Memorial Hospital-DeSoto and diagnosed as suffering from fluid retention. While at Baptist Memorial Hospital-DeSoto, Mr. Maxwell developed a stage IV bedsore.
In July 2002, Mr. Maxwell was discharged from Baptist Memorial Hospital-DeSoto. Prior to Mr. Maxwell's discharge, a wound care nurse told Mr. Maxwell that his bedsore should have *430 been debrided or scraped, but because he was being discharged, it was okay. Approximately one week after Walter Maxwell's discharge from Baptist Memorial Hospital-DeSoto, Mr. Maxwell was admitted to Delta Medical Center for debridement and scraping of the bedsore. Mr. Maxwell developed sepsis and the bacteria spread throughout his bloodstream. Mr. Maxwell later died on August 31, 2002[,] as a result of the sepsis from the underlying bedsore.
¶ 5. The complaint further alleged that Baptist was negligent and grossly negligent in the following respects:
a. Failed to develop and implement appropriate mechanisms to monitor and oversee the treatment provided by the staff, employees and/or agents practicing in the hospital;
b. Failed to continuously monitor the performances of the staff, employees and/or agents practicing in the hospital to ensure their competency to exercise the responsibilities they had been granted;
c. Failed to restrict, suspend or require supervision when medical personnel demonstrated an inability to perform certain types of procedures;
d. Failed to intervene affirmatively and actively to prevent medical personnel from endangering a hospitalized patient;
e. Failed to prevent medical personnel from providing services to hospital patients when those in charge knew or should have known through reasonable inquiry that the medical personnel were not competent;
f. Failed to enact and have in place, standard operating policies and procedures to ensure adequate and proper patient care by its staff and nursing personnel or, in the alternative, failed to ensure that such staff and nursing personnel followed any such standard operating policies and procedures in the care, treatment, monitoring, and observation of patients which were in effect during the time complained of herein;
g. Failed to provide in-house training to its staff and nursing personnel to ensure proper and adequate patient care during the time complained herein;
h. Failed to provide adequate number of nursing personnel to ensure proper and adequate patient care during the time complained [of] herein;
I. Failed to ensure that staff and nursing personnel performed their respective duties in a fashion required to ensure proper and adequate care of patients during the time complained of herein;
j. Failed to require staff and nursing personnel on duty to be available in proximity of patients to ensure patient's needs and safety are promptly attended to timely during the time complained of herein;
k. Failed to ensure that staff and nursing personnel promptly and correctly comply with instructions rendered by patient's physicians relating to the care and treatment of such patients while in the said facility during the time complained of herein; and,
l. Failed to provide the quality and standard of care required by law.
¶ 6. Finally, the complaint alleged that Baptist "breached the aforesaid duties, and such breaches proximately caused or contributed to Walter Maxwell's injuries and related damages," and that Baptist was liable under the doctrines of respondeat superior or agency for the negligence and *431 gross negligence of its "servants, agents, contractors and employees."
¶ 7. Baptist filed a general denial and followed up with discovery requests in which it sought the identity and the subject matter of the testimony of any experts that the Maxwells planned to call at trial. Baptist's first notice of service of discovery requests was filed June 5, 2003, indicating service of its first set of interrogatories, requests for production of documents, and requests for admissions. Baptist filed a second set of interrogatories on June 10, 2003. The Maxwells failed to respond to either request within thirty days as required the Mississippi Rules of Civil Procedure. See M.R.C.P. 33(b); 34(b); 36. On August 27, 2003, the circuit court entered an agreed scheduling order stating that "all discovery shall be completed on or before February 11, 2004," and directing that the Maxwells' "experts shall be designated on or before November 11, 2003." Baptist filed additional discovery requests on July 28, 2004, and August 3, 2004. Again, the Maxwells failed to answer within thirty days. They did not seek an extension from the court.
¶ 8. Finally, on January 31, 2005, the Maxwells partially responded to Baptist's discovery requests. The Maxwells identified three experts whom they "may call" at trial: Albert Britton, III, M.D.; Luanne Trahant, R.N., S.S.N., L.N.C.; and Andrew Weinberg, M.D., F.A.C.P. For each of the experts, the Maxwells' response gave the expert's schooling and training and advised that the expert would testify to a reasonable degree of certainty that Baptist "deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell's poor condition and subsequent death." The response further identified the documents, inclusive of the decedent's medical records, reviewed by the experts and provided that the testimony would be based upon that review and upon the experts' "training, education and experience" in each expert's respective field. Also, the response provided that the experts' opinions were to a "reasonable degree of medical certainty and will be seasonably supplemented as more information is learned in discovery." The Maxwells never supplemented the answers.
¶ 9. Baptist filed a motion for summary judgment on March 14, 2005. Baptist did not attach supporting affidavits to its motion, but it alleged that "[t]he [expert] opinions provided by [the Maxwells] are insufficient to establish a prima facie case of medical negligence against [Baptist's] nurses." Baptist attached a copy of the Maxwells' interrogatory answers identifying their expert witnesses and providing the substance of each expert's testimony. Baptist argued that the experts' opinions were conclusory and insufficient to avoid summary judgment. Baptist contended that the experts' opinions (1) failed to set out the standard of care applicable to Baptist in caring for Walter Maxwell, (2) failed to identify the particular point when Baptist's employees allegedly breached their duty, and (3) failed to sufficiently opine as to the proximate cause.
¶ 10. The Maxwells did not respond to the motion for summary judgment until the day of the hearing on June 2, 2005. In their response, the Maxwells asked that the motion be denied. To support their position, they submitted three affidavits: one from Luanne Trahant, R.N.; one from Leslie Tar, M.D., M.P.H.; and one from their attorney, Pieter Teeuwissen. The Maxwells stated that they were willing to make their experts available for deposition at a mutually convenient time so that Baptist could "further inquire about their opinions." Further, the Maxwells alternatively *432 requested that the hearing be continued for thirty days pursuant to Rule 56(f) of the Mississippi Rules of Civil Procedure or other applicable authority to allow them to submit supplemental affidavits from their experts.
¶ 11. Dr. Tar's affidavit stated:
I have reviewed the material medical facts relevant [to] Mr. Walter Maxwell's medical care while hospitalized at Baptist Hospital between 05/11/02 and 07/19/02. I have also reviewed the material medical facts relevant to the care he received upon discharge from Baptist Hospital to Graceland Nursing Home. Based on this review, I believe that the development of the patient's decubal [sic] ulcer, and the complications arising from the same, represents a breach from the standard of acceptable medical care. This opinion is expressed within a reasonable degree of medical certainty.
¶ 12. In her affidavit, Mrs. Trahant stated, among other things, the following:
In the fall of 2004, I was contacted by Pieter Teeuwissen to review the records of Walter Maxwell, Deceased, to formulate an opinion regarding Mr. Walters' [sic] medical treatment from Baptist Memorial Hospital.
. . . .
According to the records from Baptist Hospital, Mr. Maxwell was exposed to repeated pressure from not being turned or provided with a low air loss mattress for pressure reduction. The treatments provided to the coccyx were inappropriate for a Stage IV wound and often the records were void of entries indicating that a treatment was done to the wound. There was a significant delay in the evaluation and treatment by an enterstomal [sic] therapist and it should be noted that within 6 days after she was consulted and the proper treatment and interventions were implemented, the wound began to show signs of healing and improving. The staff's failure to provide these important assessments and interventions directly resulted in the development and deterioration of Mr. Maxwell['s] wound. These failures were clearly a breach in the standard of care for nursing as well as violations of the Mississippi Nurse Practice Act, the Mississippi Minimum Standards for Hospitals as well as the Joint Commission on Accreditation for Hospitals.
¶ 13. Mr. Teeuwissen stated the following in his affidavit:
Since March 11, 2005, I have attempted to secure affidavits in support of Plaintiffs' Response to the Motion for Summary Judgment filed by Baptist Memorial Hospital-DeSoto.
Since that time, I learned that one of [the] Plaintiffs' experts, Andrew Weinberg, M.D.[,] has been recalled to active military duty in his capacity as a Naval medical officer attached to a Marine Reserve Unit located in Virginia.
While attempting to secure the necessary affidavits to prove a prima facie case, the undersigned has maintained a busy calendar consisting of the following:
 Grading the February bar exams, chancery section, as a member of the Mississippi Board of Bar Examiners which were due March 23, 2005;
 Attending the National Conference of Bar Examiners in Seattle, Washington April 7-10, 2005;
 Preparing for trial (defense counsel) in Zid Thompson v. The City of Jackson, United States District Court for the Southern District of Mississippi, set for April 28, 2005;
 Preparing for testimony as a chancery practice expert for the defendants in the matter of Juliet Lawson Jowett v. *433 Richard F. Scruggs, et al., Jackson County Circuit Court Cause No. CI-99-0402(1);
 Researching and presenting two CLE Seminars on April 15, 2005[,] and May 4, 2005, respectively, as well as attending the quarterly Mississippi Board of Bar Admissions Meeting on April 21, 2005;
 Preparing for and participating in four-day binding arbitration in Amanda May v. Dillards, United States District Court for the Southern District of Mississippi, May 16, 2005;
 Preparing for [and] serving as lead counsel (defense) in the matter of Thomas Johnson v. The City of Jackson, Hinds County Circuit Court Cause Number XXX-XX-XXXX, beginning Monday, May 23, 2005; and,
 Preparing for trial in Theopal Smith v. King's Daughters Hospital, et al., Washington County Circuit Court Cause Number. [sic] CI 2002-380, which begins Monday, June 6, 2005[,] as a first setting set in January 2004.
All of these matters came after having traveled every week during January in preparation for trial in Barbara Reed v. Beverly Healthcare, et al., Hinds County Circuit Court Cause Number XXX-XX-XXXXCIV, a trial which lasted from February 7 through February 18, 2005. In addition, counsel prepared for and participated in oral argument before the Mississippi Supreme Court on March 7 and 8, 2005[,] in separate matters.
¶ 14. At the hearing, Baptist argued that the submitted affidavits were insufficient to establish a prima facie case of negligence on the part of Baptist. Additionally, Baptist orally moved that the response and accompanying affidavits be stricken as untimely because they were filed on the day of the hearing. The trial court struck the response, but alternatively, the court ruled that the affidavits were insufficient to prevent summary judgment. The trial court did not grant the Maxwells' request for a thirty-day continuance to allow supplementation of their expert affidavits.

LAW AND ANALYSIS
¶ 15. We review de novo a trial court's grant of summary judgment. Walker v. Whitfield Nursing Ctr., Inc., 931 So.2d 583, 587(¶ 11) (Miss.2006). The party moving for summary judgment bears the burden of persuading the court that there is no genuine issue of material fact to be tried and that he is entitled to judgment as a matter of law. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1215(¶ 30) (Miss.2001). The party with the burden of proof at trial bears the burden of production on summary judgment. Id. When the plaintiff, as in this case, bears the burden of proof at trial, a defendant may elect to move for summary judgment by identifying deficiencies in the plaintiff's evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The defendant is not required to attach supporting affidavits to the motion in furtherance of this objective. M.R.C.P. 56(b); see Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
¶ 16. When the moving party has satisfied its burden of proving that no genuine issue of material fact exits, the responding party must rebut by producing "significant probative evidence" showing that there is a genuine issue of material fact for trial. Foster v. Noel, 715 So.2d 174, 180(¶ 35) (Miss.1998). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing *434 that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." M.R.C.P. 56(e). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). This evidence must be viewed in the light most favorable to the nonmoving party. Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983).
¶ 17. The Maxwells had the burden to prove medical malpractice at trial; thus, they had the burden to produce evidence demonstrating the existence of a genuine issue of material fact. To accomplish this, the Maxwells were required to produce proof of each element of their medical malpractice claim. Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1356-57 (Miss.1990). These elements include: "(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." Hubbard v. Wansley, 954 So.2d 951, 956-57(¶ 12) (Miss.2007). Moreover, expert testimony is required to establish these elements. Id. at 957(¶ 12). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." Id. (quoting Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992)). In the absence of expert testimony supporting each element, Baptist was entitled to summary judgment.[1] "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," entitling the moving party to a judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. 2548.
¶ 18. The only evidence the Maxwells produced showing their anticipated expert testimony was contained in their interrogatory answers and in the affidavits submitted the day of the summary judgment hearing. The trial court granted Baptist's motion to strike those affidavits as untimely. Mississippi Rule of Civil Procedure 56(c) requires that affidavits be served by the opposing party prior to the day of the hearing. Under Mississippi Rule of Civil Procedure 6(d), affidavits in opposition to a motion must be served no later than one day before the hearing, unless the court allows them to be served at a later time. Rule 6(b) of the Mississippi Rules of Civil Procedure applies to a case where the non-movant for summary judgment untimely serves affidavits on the opposing party. Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 147 (Miss. 1994) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 895-97, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 6(b) states:
When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its *435 discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect....
"[T]he decision to allow the late filing rests within the court's discretion and must be for cause shown and is only permissible where the failure to meet the deadline was the result of excusable neglect." In re Will of Smith, 910 So.2d 562, 568(¶ 23) (Miss. 2005).
¶ 19. The trial court granted Baptist's motion to strike the Maxwells' affidavits as untimely filed.[2] On review of the affidavit of the Maxwells' attorney, Teeuwissen, the attorney's excuses amount to a "busy calendar." Teeuwissen stated at the June 2, 2005, hearing, by way of summation, that "This is simply something that I have not kept up with in my calendaring like I should have." The supreme court has held that counsel's busy trial schedule does not show excusable neglect. In re Estate of Ware, 573 So.2d 773, 775 (Miss.1990). Given the facts before the trial court, there was no abuse of discretion in the trial court's striking of the untimely affidavits. We note that the Maxwells' violation of the trial court's scheduling order provided an additional basis for the striking of the affidavits. Buchanan v. Ameristar Casino Vicksburg, Inc., 957 So.2d 969, 975(¶ 16) (Miss.2007). The supreme court has stated:
Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. See, e.g., Kilpatrick v. Miss. Baptist Med. Ctr., 461 So.2d 765, 767-68 (Miss.1984) (held that trial court did not abuse discretion in dismissing case due to failure to comply with pre-rules discovery statutes relating to timely designation of expert witnesses); Mallet v. Carter, 803 So.2d 504, 507-08 (Miss.Ct. App.2002) (held that trial court did not abuse discretion in dismissing case for failure to timely designate expert witness within the time allowed by the trial court's scheduling order).
Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042(¶ 14) (Miss.2003).
¶ 20. The Maxwells argue that the trial court should have granted their request for a thirty-day continuance to supplement their affidavits. Rule 56(f) provides that the trial court may order a continuance to permit a party to obtain affidavits. The grant or denial of a continuance under Rule 56(f) is a matter within the trial court's sound discretion, and the court will only be reversed for an abuse of discretion. Stallworth v. Sanford, 921 So.2d 340, 342-43(¶ 9) (Miss.2006). In Stallworth, the supreme court held that the court acted within its discretion in refusing a continuance to a medical malpractice plaintiff who had ample time to locate an expert witness before the summary judgment hearing. Id. at 343(¶ 11). In Hill v. Warden, 796 So.2d 276, 279(¶ 7) *436 (Miss.Ct.App.2001), the trial court denied the plaintiff's request for additional time to continue discovery and to take the deposition of the treating physician. This Court upheld the denial of a continuance because the plaintiff had nineteen months in which to take the deposition before the summary judgment hearing and, moreover, had failed to specify facts which she hoped to obtain from further discovery. Id. at (¶ 9).
¶ 21. In this case, the Maxwells had almost two years from the time their complaint was filed to obtain expert medical testimony in some acceptable form. See Watson v. Johnson, 848 So.2d 873 877-78(¶ 18) (Miss.Ct.App.2002) ("To have power to generate a genuine issue of material fact,' the `affidavit or otherwise' (e.g., depositions and answers to interrogatories) must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify."). Their failure to do so was the result of inexcusable neglect. From June 5, 2003, to January 30, 2005, the Maxwells ignored four separate discovery requests from Baptist and the trial court's scheduling order and deadline to designate experts. And, they never requested additional time before the day of the hearing, which is an easily drafted and routinely granted request. Rule 56(f) is not meant to afford protection to the dilatory litigant. Stallworth, 921 So.2d at 343(¶ 11). The trial court did not abuse its discretion by failing to grant a continuance.
¶ 22. Without the affidavits, the Maxwells' unsupplemented interrogatory answers contained the only expert opinions before the trial court. These opinions were unsworn. In the Maxwells' interrogatory answers, for each expert, the Maxwells gave the expert's schooling and training, specified the information reviewed by the expert, and advised that the expert would testify to a reasonable degree of certainty that Baptist "deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell's poor condition and subsequent death." These expert opinions did not sufficiently establish each of the elements of a prima facie case of medical malpractice set out in Hubbard. Hubbard, 954 So.2d at 956-57(¶ 12). Therefore, the opinions did not create a genuine issue of material fact, and summary judgment was appropriate. We affirm the grant of summary judgment in favor of Baptist.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS, P.J., GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, C.J., LEE, P.J., AND BARNES, J. CARLTON, J., NOT PARTICIPATING.
IRVING, J., dissenting:
¶ 24. I cannot agree that, under the unique facts of this case, summary judgment was appropriate. Therefore, I dissent. I would remand this case to the trial court for further proceedings pursuant to subsections (e) and (f) of Rule 56 of the Mississippi Rules of Civil Procedure.[3]
*437 ¶ 25. Daron and Peggy Maxwell filed a medical negligence action against Baptist Memorial Hospital-DeSoto, Inc., alleging that Baptist's negligence caused the death of their father, Walter Maxwell. More specifically, in their complaint, the Maxwells allege that:
On May 11, 2002, Walter Maxwell was admitted to Baptist Memorial Hospital-DeSoto and diagnosed as suffering from retention. While at Baptist Memorial Hospital-DeSoto, Mr. Maxwell developed a stage IV bedsore.
In July 2002, Mr. Maxwell was discharged from Baptist Memorial Hospital-DeSoto. Prior to Mr. Maxwell's discharge, a wound care nurse told Mr. Maxwell that his bedsore should have been debrided or scraped, but because he was being discharged, it was okay.
Approximately one week after Walter Maxwell's discharge from Baptist Memorial Hospital-DeSoto, Mr. Maxwell was admitted to Delta Medical Center for debridement and scraping of the bedsore. Mr. Maxwell later died on August 31, 2002, as a result of the sepsis from the underlying bedsore.
¶ 26. The complaint further alleges that Baptist was negligent and grossly negligent in the following respects because it:
a. Failed to develop and implement appropriate mechanisms to monitor and oversee the treatment provided by the staff, employees and/or agents practicing in the hospital;
b. Failed to continuously monitor the performances of the staff, employees and/or agents practicing in the hospital to ensure their competency to exercise the responsibilities they had been granted;
c. Failed to restrict, suspend or require supervision when medical personnel demonstrated an inability to perform certain types of procedures;
d. Failed to intervene affirmatively and actively to prevent medical personnel from endangering a hospitalized patient;
e. Failed to prevent medical personnel from providing services to hospital patients when those in charge knew or should have known through reasonable inquiry that the medical personnel were not competent;
f. Failed to enact and have in place standard operating policies and procedures to ensure adequate and proper patient care by its staff and nursing personnel or, in the alternative, failed to ensure that such staff and nursing personnel followed any such standard operating policies and procedures in the care, treatment, monitoring and observation of patients which were in effect during the time complained of herein;
g. Failed to provide in-house training to its staff and nursing personnel to ensure proper and adequate patient care during the time complained of herein;
h. Failed to provide adequate number of nursing personnel to ensure proper and adequate patient care during the time complained of herein;

*438 i. Failed to ensure that staff and nursing personnel performed their respective duties in a fashion required to ensure proper and adequate care of patients during the time complained of herein;
j. Failed to require staff and nursing personnel on duty to be available in proximity of patients to ensure patients, needs and safety are promptly attended to timely during the time complained of herein;
k. Failed to ensure that staff and nursing personnel promptly and correctly comply with instructions rendered by patients' physicians relating to the care and treatment of such patients while in the said facility during the time complained of herein; and,
l. Failed to provide the quality and standard of care required by law.
¶ 27. Finally, the complaint alleges that Baptist "breached the aforesaid duties, [that] such breaches proximately caused or contributed to Walter Maxwell's injuries and related damages," and that Baptist was liable under the doctrines of respondeat superior or agency for the negligence and gross negligence of its "servants, agents, contractors and employees."
¶ 28. Baptist filed a general denial and followed up with discovery requests in which it sought, inter alia, the identity and the subject matter of the testimony of any experts that the Maxwells planned to call at trial. The Maxwells responded approximately six weeks prior to Baptist filing its motion for summary judgment. In their response to Baptist's discovery request, the Maxwells identified three experts: Albert Britton, III, M.D.; Luanne Trahant, R.N., S.S.N., L.N.C.; and Andrew Weinberg, M.D., F.A.C.P. For each of the experts, the Maxwells' response gave the expert's schooling and training, and advised that the expert would testify that Baptist "deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell's poor condition and subsequent death." The response further identified the documents, inclusive of the decedent's medical records, reviewed by the expert and provided that the testimony would be based upon that review and upon the expert's "training, education and experience" in his respective field. Finally, the response provided that the expert's opinion was "to a reasonable degree of medical certainty and will be seasonably supplemented as more information is learned in discovery."
¶ 29. After receiving the Maxwells' response, Baptist did not seek to compel any further discovery. Instead, apparently concluding that the response was insufficient to create a genuine issue of material fact regarding Baptist's negligence and its role in causing or contributing to Walter Maxwell's death, Baptist moved for summary judgment. No affidavits were attached to the motion or submitted in support thereof. The motion averred that "[t]he opinions provided by [the Maxwells] are insufficient to establish a prima facie case of medical negligence against [Baptist] nurses, in that they fail to set forth the standard of care or identify the manner in which the nurses allegedly breached the standard of care."
¶ 30. The Maxwells responded to the motion for summary judgment, but not until the day of the hearing. In their response, the Maxwells submitted three affidavits, one from Luanne Trahant, one from Leslie Tar, M.D., M.P.H., and one from their attorney, the Honorable Pieter Teeuwissen. The Maxwells also stated that they were willing to make their experts available for deposition at a mutually *439 convenient time so that Baptist could "further inquire about their opinions."
¶ 31. Dr. Tar stated in his affidavit:
I have reviewed the material medical facts relevant [to] Mr. Walter Maxwell's medical care while hospitalized at Baptist Hospital between 05/11/02 and 07/19/02. I have also reviewed the material medical facts relevant to the care he received upon discharge from Baptist Hospital to Graceland Nursing Home. Based on this review, I believe that the development of the patient's decubal [sic] ulcer, and the complications arising from the same, represent a breach from the standard of acceptable medical care. This opinion is expressed within a reasonable degree of medical certainty.
¶ 32. In her affidavit, Mrs. Trahant stated, among other things, the following:
In the fall of 2004, I was contacted by Pieter Teeuwissen to review the records of Walter Maxwell, deceased, to formulate an opinion regarding Mr. Walters' medical treatment from Baptist Memorial Hospital.
* * * * * *
According to the records from Baptist Hospital, Mr. Maxwell was exposed to repeated pressure from not being turned or provided with a low air loss mattress for pressure reduction. The treatments provided to the coccyx were inappropriate for a Stage IV wound and often the records were void of entries indicating that a treatment was done to the wound. There was a significant delay in the evaluation and treatment by an enterstomal [sic] therapist and it should be noted that within 6 days after she was consulted and the proper treatment and interventions were implemented, the wound began to show signs of healing and improving. The staff's failure to provide these important assessments and interventions directly resulted in the development and deterioration of Mr. Maxwell [sic] wound. These failures were clearly a breach in the standard of care for nursing as well as violations of the Mississippi Nurse Practice Act, the Mississippi Minimum Standards for Hospitals as well as the Joint Commission on Accreditation for Hospitals.
¶ 33. Mr. Teeuwissen stated the following in his affidavit:
Since March 11, 2005, I have attempted to secure affidavits in support of Plaintiffs' Response to the Motion for Summary Judgment filed by Baptist Memorial Hospital-DeSoto.
Since that time, I learned that one of Plaintiffs' experts, Andrew Weinberg, M.D.[,] has been recalled to active military duty in his capacity as a Naval medical officer attached to a Marine Reserve Unit located in Virginia.
While attempting to secure the necessary affidavits to prove a prima facie case, the undersigned has maintained a busy calendar consisting of the following:
 Grading the February bar exams, chancery section, as a member of the Mississippi Board of Bar Examiners which were due March 23, 2005;
 Attending the National Conference of Bar Examiners in Seattle, Washington April 7-10, 2005;
 Preparing for trial (defense counsel) in Zid Thompson v. The City of Jackson, United States District Court for the Southern District of Mississippi, set for April 28, 2005;
 Preparing for testimony as a chancery practice expert for the defendants in the matter of Juliet Lawson Jowett v. Richard F. Scruggs, et al., Jackson County Circuit Court Cause No. CI-99-0402(1);

*440  Researching and presenting two CLE Seminars on April 15, 2005 and May 4, 2005, respectively, as well as attending the quarterly Mississippi Board of Bar Admissions Meeting on April 21, 2005;
 Preparing for and participating in four-day binding arbitration in Amanda May v. Dillards, United States District Court for the Southern District of Mississippi, May 16, 2005;
 Preparing for [and] serving as lead counsel (defense) in the matter of Thomas Johnson v. The City of Jackson, Hinds County Circuit Court Cause Number XXX-XX-XXXX, beginning Monday, May 23, 2005; and,
 Preparing for trial in Theopal Smith v. King's Daughters Hospital, et al., Washington County Circuit Court Cause Number, CI 2002-2380, which begins Monday, June 6, 2005[,] as a first setting set in January 2004.
All of these matters came after having traveled every week during January in preparation for trial in Barbara Reed v. Beverly Healthcare, et al., Hinds County Circuit Court Cause Number XXX-XX-XXXXCIV, a trial which lasted from February 7 through February 18, 2005. In addition, counsel prepared for and participated in oral argument before the Mississippi Supreme Court on March 7 and 8, 2005[,] in separate matters.
¶ 34. The majority finds that the trial court did not err in striking the Maxwells' affidavits. It should be pointed out that the record before us does not contain the bench ruling of the trial court. The record reflects that during the hearing on the motion for summary judgment, the trial judge stated that if he were to strike the affidavits, such action would dictate that the motion be granted. However, at the end of the hearing, the trial judge took the motion under advisement. The judge granted the motion twenty-eight days later when he issued an order finding that the motion for summary judgment was well-taken and incorporating his oral ruling given from the bench on June 30, 2005. The bench ruling, referenced in the judge's order, was not made a part of the record on appeal, which was docketed with the clerk of this Court on January 4, 2006. The record further reflects that on May 5, 2006, Baptist filed a motion to supplement the record with the judge's June 30 bench ruling. However, this motion was dismissed by the clerk on May 8, 2006, "for failure to attach certified copies pursuant to MRAP 10(e)." The record does not reflect any further action by Baptist to provide a certified copy of the ruling, and I can find no certified copy of the ruling in the record. There is an uncertified copy, which apparently is the document relied upon by the majority in its finding that the trial court struck the affidavits.
¶ 35. It is well-settled law that "Mississippi appellate courts may not consider information that is outside the record." Peden v. City of Gautier, 870 So.2d 1185, 1188(¶ 8) (Miss.2004) (citing Dew v. Langford, 666 So.2d 739, 746 (Miss.1995)). Consequently, we cannot consider the trial court's reasoning in support of its order. Nevertheless, assuming arguendo that the bench ruling is before us such that we can consider it, I would acknowledge that it was well within the court's discretion to strike the affidavits. However, had I been the trial judge, I would not have done so. On the unique facts here, it might have been more appropriate to view the affidavits as a fleshing out or supplementation of the Maxwells' response to Baptist's interrogatory regarding the Maxwells' experts. After all, two of the affidavits were from individuals who had been identified in the Maxwells' response to Baptist's interrogatory seeking the identity of the Maxwells' experts. Despite my failure to find reversible *441 error with the trial court's striking the affidavits, I still believe summary judgment was improperly granted. I now turn to a discussion of my reasons for believing so, even if there was no error in striking the affidavits of the Maxwells' experts.
¶ 36. In my view, the response submitted by the Maxwells to Baptist's expert interrogatory was sufficient to preclude summary judgment. The majority acknowledges that the response contains opinions of experts who would "testify to a reasonable degree of certainty that Baptist `deviated from the standard of care in [its] management of Walter Maxwell, and that these deviations caused or contributed to Walter Maxwell's poor condition and subsequent death.'" However, the majority, citing Hubbard v. Wansley, 954 So.2d 951, 956-57(¶ 12) (Miss.2007), finds that the response "[does] not sufficiently establish each of the elements of a prima facie case of medical malpractice" and are therefore insufficient to prevent summary judgment. With all due respect to the majority, the quoted authority does not address the limited and specific issue that is before us: whether interrogatory answers that do not technically comply with the requirements of our discovery rules are sufficient to preclude the grant of summary judgment where the proponent of summary judgment did not object to the sufficiency of a response when it was made.
¶ 37. I readily admit that our rules of procedure require sworn responses to interrogatories. However, I am not prepared to sanction the grant of summary judgment against a party, based on an unsworn response, where the proponent of summary judgment, at the time of the response, did not question either the completeness or the form of the response with respect to its compliance with the rules.[4] Further, I agree that the affidavits submitted by the Maxwells were untimely and not as complete as they should have been, but given (1) the pleadings in this case, (2) the Maxwells' unchallenged responses to Baptist's interrogatories, and (3) the lack of a medical affidavit by Baptist contradicting the allegations contained both in the Maxwells' complaint and in their answers to interrogatories, it is my view that the trial judge erred in granting summary judgment. It seems to me that on these unique facts, summary judgment was improvidently granted, and further proceedings pursuant to Rule 56(e) and (f) of the Mississippi Rules of Civil Procedure were, and are, warranted. I do not believe that Baptist could simply rely on its motion. After all, the proponent of a motion for summary judgment must prove that he is entitled to summary judgment, even if the opponent of the motion makes no response. Foster v. Noel, 715 So.2d 174, 180(¶ 36) (Miss.1998); Brown v. Credit Ctr., Inc., 444 So.2d 358, 364 (Miss.1983).
¶ 38. I would reverse and remand for a full trial on the merits after allowing Baptist adequate time to depose the Maxwells' experts if it desires to do so.
KING, C.J., LEE, P.J., AND BARNES, J., JOIN THIS OPINION.
NOTES
[1] We observe that the Maxwells filed their complaint on December 31, 2002, the day before the requirements of Mississippi Code Annotated section 11-1-58 (Supp.2007) took effect. Section 11-1-58 now requires a certificate to accompany a complaint alleging medical malpractice stating that the attorney has consulted an expert and concluded that there is a reasonable basis for the action or that the attorney failed to consult an expert after a good faith effort. Miss.Code Ann. § 11-1-58(1).
[2] The dissent points out that the trial court struck the affidavits in a bench ruling on June 30, 2005, and that the copy of the bench ruling before this Court is uncertified. Mississippi Rule of Appellate Procedure 10(e) provides that "[a]ny document submitted to either appellate court for inclusion in the record must be certified by the clerk of the trial court." We note that no party has questioned the content of the uncertified copy, and there is no reason for this Court to presume that it does not accurately reflect the trial court's actual bench ruling. The Maxwells have never disputed Baptist's assertion that the trial court did strike the affidavits before granting the motion for summary judgment.
[3] Subsection (e) provides in part:

The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
Subsection (f) provides:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
[4] I note that Baptist's motion for summary judgment challenged the sufficiency of the response provided by the Maxwells to Baptist's expert witness interrogatory. However, it did not challenge the sufficiency of the response on the bases that it was unsworn and not in compliance with the rules.